IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| JODY A. GRIFFETH, ) | |
| ) | CASE NO. BK09-40127-TLS |
| Debtor(s). ) | A09-4033-TLS |
| JOHNSON & MOCK, a partnership, ) | |
| ) | |
| Plaintiff, ) | CH. 13 |
| ) | |
| vs. ) | |
| ) | |
| JODY A. GRIFFETH, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the court on the debtor-defendant's motion for summary judgment (Fil. #10) and objection by the plaintiff (Fil. #14). David P. Lepant represents the debtor, and Adam J. Sipple represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

The plaintiff, a law firm, provided legal services to the debtor during his divorce proceedings in 2006 and 2007. The firm holds a judgment for unpaid legal fees in the amount of $11,807.50, plus $57.54 in costs and post-judgment interest at 3.532% per annum, and filed a proof of claim in the bankruptcy case for $12,173.12. The terms of the debtor's confirmed plan treat the firm's claim as an unsecured claim. The firm objects to the discharge of this debt, arguing that the debtor's actions in endorsing a check for proceeds of the property settlement and retaining those proceeds while assuring the law firm he would remit some of the funds in partial payment of his debt constitutes fraud, false representations, and larceny, rendering the debt nondischargeable.

The debtor has moved for summary judgment, asserting that the law firm cannot establish the elements necessary to except the debt from discharge.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In ruling on

a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-34 (8th Cir. 2004).

The parties agree on the following facts:

1. Johnson & Mock is a law firm that provided legal services to Mr. Jody Griffeth in a contested divorce and custody proceeding in 2006 and 2007.

2. Mr. Griffeth retained Johnson & Mock on June 23, 2006, by paying the firm a $3,000.00 retainer.

3. Mr. Griffeth signed a fee agreement with Johnson & Mock that contained the following provision regarding payment of fees: "Payment of any outstanding balance is due on the 30th of each month and failure to make payments due shall entitle the Firm, at our option, to refuse to proceed with representation or to withdraw from the case."

4. Thereafter, Johnson & Mock began working on Mr. Griffeth's divorce case, billing him for the work performed in monthly statements.

5. The funds required for legal fees and other expenses were initially deducted from Mr. Griffeth's paid retainer, held in trust.

6. After January 2007, however, Mr. Griffeth's account began accruing a balance as the retainer had been depleted from the legal work performed by the firm.

7. Mr. Griffeth's first balance owed to the firm was $996.56 at the end of February 2007.

8. This debt gradually accrued over the course of seven months to the sum of $11,807.50.

9. At no time did Mr. Griffeth ever pay any monies to Johnson & Mock, other than the $3,000.00 retainer.

10. Each of Johnson & Mock's account statements sent to Mr. Griffeth contained a notice at the bottom in bold, underlined text stating: "PAYMENT IS DUE UPON RECEIPT."

11. The balance due on Mr. Griffeth's account was $5,424.11 in May 2007, and $11,308.30 in June 2007.

12. On or about September 5, 2007, Johnson & Mock filed a notice of attorney's lien in the marital dissolution action in the District Court of Douglas County, Nebraska, for the sum of $11,702.50. By this time, Mr. Griffeth's account had maintained a balance due and owing for approximately six months.

13. On September 19, 2007, Johnson & Mock received a letter from counsel for Mr. Griffeth's ex-wife stating, among other things, that Mr. Griffeth owed child support arrearage and spousal support arrearages in the aggregate amount of $2,430.58.

14. The letter also included a credit report for Mr. Griffeth's ex-wife with notations alleging certain past-due debts were Mr. Griffeth's.

15. During the course of representation, Johnson & Mock learned Mr. Griffeth had unpaid medical or other financial obligations.

16. In early October 2007, Johnson & Mock received a check payable to Mr. Griffeth from Mrs. Griffeth representing payment on a judgment for Mr. Griffeth's interest in the marital residence.

17. Johnson & Mock telephoned Mr. Griffeth and asked him to come into the office to endorse the check.

18. Mr. Griffeth did not come to the office, so Johnson & Mock mailed the check to him on October 8, 2007, for his endorsement. The law firm's cover letter contains instructions to return the check to Johnson & Mock, which would deposit it in the firm's trust account, pay an outstanding medical bill owed by Mr. Griffeth, apply $8,061.09 to the legal fees due, and remit the remaining $1,938.00 to Mr. Griffeth.

19. Mr. Griffeth did not return the check to Johnson & Mock. He used the proceeds from the check for past-due support obligations and other bills.

20. Johnson & Mock obtained a judgment against Mr. Griffeth in Douglas County Court on May 14, 2008, for $11,807.50, not including costs and judgment interest. The judgment was filed in Mr. Griffeth's county of residence, Lancaster County, Nebraska, on May 23, 2008.

21. Mr. Griffeth filed his Chapter 13 bankruptcy petition on January 21, 2009.

22. Johnson & Mock filed a timely proof of claim for legal fees in the amount of $12,173.12.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), a creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). To

amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The key is whether the debtor knew the statement to be false at the time he made it. "Even if a false statement is made, no fraud exists unless the maker knows the statement is false at the time the statement is made." *Nelson*, 357 B.R. at 513.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. The plaintiff does not allege circumstances indicating the debtor acted in a fiduciary capacity. The parties had a debtor-creditor relationship, which, in and of itself, does not give rise to a fiduciary relationship and therefore cannot support that aspect of a § 523(a)(4) cause of action. The other two facets of § 523(a)(4) are embezzlement and larceny. "Embezzlement" is the fraudulent appropriation of property of another by a person to whom such property has been entrusted or into whose hands it has lawfully come. *Belfry v. Cardozo (In re Belfry)*, 862 F.2d 661, 662 (8th Cir. 1988). The plaintiff must establish that the debtor was not lawfully entitled to use the funds for the purposes for which they were in fact used. *Id.* To show embezzlement, the creditor has to prove that it entrusted its property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud. *Bankers Trust Co. v. Hoover (In re Hoover)*, 301 B.R. 38, 52 (Bankr. S.D. Iowa 2003). Implicit in a claim of embezzlement is a degree of fraudulent intent. *Chapman v. Fuget (In re Fuget)*, 339 B.R. 702, 707 (Bankr. S.D. Iowa 2006). "Larceny" is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without consent of the owner. *Rech v. Burgess (In re Burgess)*, 106 B.R. 612, 622 (Bankr. D. Neb. 1989). "The essential difference between larceny and embezzlement is the manner in which property comes into the possession of the person charged. Embezzlement involves a lawful or authorized possession. In the case of larceny, however, the original taking and possession is unlawful." *Id.*

Contrary to the debtor's argument, the facts of this case do present a § 523(a)(4) cause of action. The embezzlement and larceny prongs of the statute require a finding that the debtor misappropriated property belonging to another. In this case, the law firm held a perfected attorney's lien, which by statute[1] attaches to the client's money in the firm's possession and in the hands of Mrs. Griffeth. The lien was perfected when Johnson & Mock gave appropriate notice of the attorney's lien. *Stover v. Lancaster County*, 710 N.W.2d 84, 89 (Neb. 2006). The lien covered the funds represented by the check from Mrs. Griffeth and the funds therefore became the property of

---

[1]Neb. Rev. Stat. § 7-108. Attorney's liens
    An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.

the law firm. *See Anderson v. Lamme (In re Estate of Anderson)*, 118 N.W.2d 339, 843 (Neb. 1962); *Van Etten v. State*, 40 N.W. 289 (Neb. 1888):

> If [Client] was indebted to [Attorney] for professional services rendered in other causes, [Attorney] had a lien upon the money received for such services. That lien extended to the whole indebtedness covering the general balance due. If the lien existed, he could not be called upon to pay over the money. It was his. . . . [T]he money in his hands, which would otherwise belong to his client, is not such client's money until the attorney's lien is discharged.

40 N.W. at 291-92.

Because the firm entrusted the check to the debtor, the plaintiff could argue that the debtor embezzled the funds to which the firm was entitled.[2] Likewise, on the firm's § 523(a)(2)(A) cause of action, the firm alleges that the debtor deliberately and intentionally made a representation that he knew to be false for the purpose of deceiving the firm so he could keep the entire $10,000.00 without paying his attorney's fees. Both statutory sections require proof of intent to deceive. Questions of fact exist as to the understanding or arrangement the parties reached at the time the law firm agreed to mail the check to the debtor for his endorsement, as well as the debtor's intentions regarding payment of his legal bill. For these reasons, the motion for summary judgment must be denied.

IT IS ORDERED: The debtor-defendant's motion for summary judgment (Fil. #10) is denied.

DATED: October 29, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
  *David P. Lepant
  Adam J. Sipple
  U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[2]Although the plaintiff did not expressly allege embezzlement in the complaint, federal procedural rules make clear that a party may be granted relief to which that party is entitled, even if the party has not demanded such relief in its pleadings. Fed. R. Civ. P. 54(c); Fed. R. Bankr. P. 7054(a). "[W]hen a party has a valid claim, he should recover on it regardless of his counsel's failure to perceive the true basis of the claim at the pleading stage, provided that such a shift does not work to the prejudice of the opposing party." *Webb v. Hiykel*, 713 F.2d 405, 408 (8th Cir. 1983).