IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-40127-TLS |
| | ) | |
| JODY A. GRIFFETH, | ) | CH. 13 |
| | ) | |
| Debtor. | ) | |
| JOHNSON AND MOCK, a partnership, | ) | ADV. NO. A09-4033-TLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JODY A. GRIFFETH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in Lincoln, Nebraska, on February 25, 2010, on Plaintiff's complaint (Fil. #1). Michael Tasset appeared for Adam J. Sipple and Johnson and Mock, and David P. Lepant and John Lentz, a senior certified law student, appeared for Jody A. Griffeth. The parties were given the opportunity to file post-trial briefs, and the matter was taken under advisement.

Johnson and Mock, a law firm, provided legal services to Mr. Griffeth during his divorce proceedings in 2006 and 2007. The firm holds a judgment for unpaid legal fees in the amount of $11,807.50, plus $57.54 in costs and post-judgment interest at 3.532% per annum, and filed a proof of claim in the bankruptcy case for $12,173.12. The terms of Mr. Griffeth's confirmed plan treat the firm's claim as an unsecured claim. The firm objects to the discharge of this debt, arguing that Mr. Griffeth's actions in endorsing a check for proceeds of the property settlement and retaining those proceeds while assuring the law firm he would remit some of the funds in partial payment of his debt constitutes fraud, false representations, and larceny, rendering the debt nondischargeable.

The following facts are undisputed:

1.      Johnson and Mock is a law firm that provided legal services to Mr. Griffeth in a contested divorce and custody proceeding in 2006 and 2007. Adam J. Sipple is an attorney with the firm of Johnson and Mock.

2.      Mr. Griffeth retained Johnson and Mock on June 23, 2006, by paying the firm a $3,000.00 retainer.

3.      Mr. Griffeth signed a fee agreement with Johnson and Mock that contained the following provision regarding payment of fees: "Payment of any outstanding balance is due on the

30th of each month and failure to make payments due shall entitle the Firm, at our option, to refuse to proceed with representation or to withdraw from the case."

4. Thereafter, Mr. Sipple began working on Mr. Griffeth's divorce case, billing him for the work performed in monthly statements.

5. The funds required for legal fees and other expenses were initially deducted from Mr. Griffeth's paid retainer, held in trust.

6. After January 2007, however, Mr. Griffeth's account began accruing a balance as the retainer had been depleted from the legal work performed by the firm.

7. Mr. Griffeth's first balance owed to the firm was $996.56 at the end of February 2007.

8. This debt gradually accrued over the course of seven months to the sum of $11,807.50.

9. At no time did Mr. Griffeth ever pay any monies to Johnson and Mock, other than the $3,000.00 retainer.

10. Each of Johnson and Mock's account statements sent to Mr. Griffeth contained a notice at the bottom in bold, underlined text stating: "PAYMENT IS DUE UPON RECEIPT."

11. The balance due on Mr. Griffeth's account was $5,424.11 in May 2007, and $11,308.30 in June 2007.

12. On or about September 5, 2007, Johnson and Mock filed a notice of attorney's lien in the marital dissolution action in the District Court of Douglas County, Nebraska, for the sum of $11,702.50. By this time, Mr. Griffeth's account had maintained a balance due and owing for approximately six months.

13. In early October 2007, Mr. Sipple on behalf of Johnson and Mock received a check in the amount of $10,000.00, payable to Mr. Griffeth from Mrs. Griffeth representing payment on a judgment for Mr. Griffeth's interest in the marital residence.

14. Mr. Sipple telephoned Mr. Griffeth and asked him to come into the office to endorse the check.

15. Mr. Griffeth did not come to the office and after the phone conversation Mr. Sipple mailed the check to him on October 8, 2007, for his endorsement. The law firm's cover letter contains instructions to return the check to Johnson and Mock, which would then be deposited in the firm's trust account and the funds disbursed in accordance with the letter. According to the letter, $8,061.09 was to be retained by the law firm.

16. Mr. Griffeth did not return the check to Johnson and Mock. He used the proceeds from the check for past-due support obligations and other bills.

17. Johnson and Mock obtained a judgment against Mr. Griffeth in Douglas County Court on May 14, 2008, for $11,807.50, not including costs and judgment interest. The judgment was filed in Mr. Griffeth's county of residence, Lancaster County, Nebraska, on May 23, 2008.

18. Mr. Griffeth filed his Chapter 13 bankruptcy petition on January 21, 2009.

19. Johnson and Mock filed a timely proof of claim for legal fees in the amount of $12,173.12.

The dispute in this case centered around the substance of the telephone conversation between Mr. Sipple and Mr. Griffeth that resulted in Mr. Sipple mailing the $10,000.00 check to Mr. Griffeth on October 8, 2007.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), a creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *Universal Bank, N.A. v. Grause (In re Grause)*, 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing *Thul v. Ophaug (In re Ophaug)*, 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by *Field v. Mans*, 516 U.S. 59 (1995)); *Blue Skies, Inc. v. Preece (In re Preece)*, 367 B.R. 647, 652 (B.A.P. 8th Cir. 2007). To amount to fraud, a statement must be made deliberately and intentionally with the intention and purpose of deceiving. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *Federal Trade Comm'n v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

Addressing each of the foregoing elements of a § 523(a)(2)(A) cause of action in order:

1. *The debtor made a representation*. Mr. Sipple testified unequivocally that he mailed the check to Mr. Griffeth based on Mr. Griffeth's representation and agreement to endorse the check and return it to him. Mr. Griffeth owed Mr. Sipple's law firm a substantial amount of money and the firm had an attorney's lien on the funds represented by the $10,000.00 check. Mr. Sipple could have required the check to be reissued to be payable jointly or otherwise taken action within the context of the divorce proceeding to ensure receipt of the funds. He did not do so based on the representation by Mr. Griffeth to endorse the check and return it. Mr. Griffeth did not specifically deny making that representation. Further, the cover letter spelled out the details of a distribution scheme that clearly

had to have been the result of an agreement between Mr. Sipple and Mr. Griffeth. Thus, I find that the representation was made by Mr. Griffeth.

2. *The representation was made at a time when the debtor knew the representation was false.* The endorsement and return of the check are simple acts that take no time at all. No testimony was presented regarding any change in Mr. Griffeth's circumstances between the date of the phone call between Mr. Griffeth and Mr. Sipple and his receipt of the check. In other words, there is no evidence of anything taking place within that short window of time that would justify failing to comply with the representation. The evidence indicates that Mr. Griffeth avoided appearing in person at the law firm to endorse the check, thereby inducing Mr. Sipple to mail it to him. That indicates Mr. Griffeth never had any intention to endorse and return the check. Therefore, the representation was made at a time Mr. Griffeth knew it to be false.

3. *The debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor.* Again, the circumstantial evidence indicates that Mr. Griffeth avoided appearing in person to endorse the check by convincing Mr. Sipple to mail it to him. Mr. Griffeth failed to offer any credible explanation as to why he retained the funds despite the clear instructions of the cover letter. Mr. Griffeth received the letter, cashed the check, and intentionally disregarded the conditions under which the check was delivered to him. This element is satisfied.

4. *The creditor justifiably relied on such representation.* The justifiable reliance threshold is quite low. *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell),* 423 B.R. 309, 314-16 (B.A.P. 8th Cir. 2010). Mr. Sipple had no reason to believe that Mr. Griffeth would not honor his agreement to endorse the check and return it. As Johnson and Mock notes in its brief, the firm should not be penalized for extending civility, courtesy, and trust based on the judgment of its lawyers.

5. *The creditor sustained a loss as the proximate result of the representation having been made.* It is clear that by relying upon Mr. Griffeth's representation Mr. Sipple and the firm lost funds in the amount of $8,061.09, which is the amount that Mr. Sipple, on behalf of the firm, agreed to accept from the $10,000.00 check upon endorsement by Mr. Griffeth.

Johnson and Mock has met all of the elements for a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A) for the sum of $8,061.09. Further, since the same funds are at issue in the § 523(a)(4) cause of action, there is no reason to address that cause of action.

Separate judgment to be entered.

DATED: April 6, 2010.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    \*Michael Tasset/Adam J. Sipple
    \*David P. Lepant/John Lentz
    Kathleen Laughlin
    United States Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.